**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| SHERI SHERIFF, | ) | |
| | ) | 8:07CV475 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | ORDER |
| MIDWEST HEALTH PARTNERS, P.C. | ) | |
| and MIDWEST OB-GYN CLINIC, P.C., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on the defendants' Renewed Motion for Judgment as a Matter of Law, or in the Alternative Motion for New Trial (Filing No. 75) and the plaintiff's Motion for Attorney Fees (Filing No. 77).[1]  The defendants filed a brief (Filing No. 76) in support of their motion.  The plaintiff filed a brief (Filing No. 82) in opposition to the defendants' motion and a brief (Filing No. 80) and an index of evidence (Filing No. 78) in support of her motion.  The defendants filed a brief (Filing No. 83) and an index of evidence (Filing No. 84) in opposition to the plaintiff's motion for attorney fees.

## INTRODUCTION

On December 11, 2007, the plaintiff filed a complaint alleging the defendants engaged in unlawful employment practices in violation of Title VII of the 1964 Civil Rights Act and the Nebraska Fair Employment Practices Act (NFEPA).  **See** Filing No. 1.  The plaintiff claimed she was subjected to discrimination, sexual harassment, a hostile work environment, and that she was constructively discharged from her employment.  The defendants denied their employee, Dr. Curtis Meyer (Dr. Meyer), engaged in sexual harassment or that the plaintiff was subjected to a hostile work environment.  Moreover, the defendants denied that they discriminated against the plaintiff due to her gender or caused her constructive discharge from employment.  **See** Filing No. 10.

---

[1]  On March 4, 2008, the case was assigned to the undersigned magistrate judge after consent by the parties to jurisdiction under 28 U.S.C. § 636(c).  **See** Filing No. 21.

## PROCEDURAL HISTORY

On December 2, 2008, the court denied the defendants' Motion for Summary Judgment on all issues, finding genuine issues of material fact precluded summary treatment of the case.  **See** Filing No. 44.  The court conducted a three-day jury trial, which commenced on June 22, 2009.  **See** Filing No. 65 (court minutes).  On June 23, 2009, after the plaintiff rested her case in-chief, the defendants orally moved for judgment as a matter of law on all claims.  **See** Filing No. 67 (court minutes).  The court granted the motion as to the plaintiff's claim for gender discrimination and denied the motion in all other respects. **See** *id.*  On June 24, 2009, the defendants rested their case and renewed their motion for judgment as a matter of law, which was denied.  The jury returned a verdict in favor of the plaintiff on the claim for a hostile work environment on the basis of sexual harassment, but in favor of the defendants on the claim for constructive discharge.  **See** Filing No. 70.  The jury awarded the plaintiff $100,000, in damages.  **See** *id.*

On July 6, 2009, the defendants filed the instant motion renewing their assertion for judgment as a matter of law under Fed. R. Civ. P. 50(b).  **See** Filing No. 75.  In the alternative, the defendants seek a new trial under Fed. R. Civ. P. 59(a).  **See** *id.* Specifically, the defendants claim the evidence was insufficient to substantiate the damages awarded by the jury; to establish a causal nexus between Dr. Meyer's conduct and the plaintiff's gender; to establish Dr. Meyer's conduct was sufficiently severe or pervasive to rise to the level of an actionable harm under Title VII; or to establish the defendants failed to take prompt remedial action.  **See** *id.*  Finally, if the defendants do not prevail in receiving judgment as a matter of law or a new trial, they seek an alteration or amendment of the judgment to decrease the damage award under Fed. R. Civ. P. 59(e), arguing the jury's verdict was against the clear weight of the evidence and was excessive **See** *id.*  The plaintiff opposes each part of the defendants' motion, arguing the evidence supports the jury's verdict in its entirety.  **See** Filing No. 82 - Brief.

On July 8, 2009, the plaintiff filed a motion seeking to recover statutory fees of $70,870 for attorney services.  **See** Filing No. 77.  The defendants oppose the amount of fees sought on two grounds.  First, the defendants argue the plaintiff was successful on only one of her several claims, which requires a reduction in fees.  Second, the defendants

2

contend the plaintiff's attorneys spent more time than necessary on the case by, for example, having two attorneys and one paralegal attend each deposition. The defendants request the plaintiff's attorney fees be limited to $36,000. **See** Filing No. 83 - Brief.

### FACTS DEVELOPED AT TRIAL

The plaintiff began working for the defendants in September of 2003. The plaintiff was employed as a physical therapist by the defendants and was in charge of the defendants' physical therapy department. The plaintiff's business as a physical therapist came mostly based on referrals from chiropractors in the same office. On March 17, 2005, after the plaintiff purchased coffee for people in the office, Dr. Meyer kissed the plaintiff on her temple to thank her for the coffee. The plaintiff reported the incident to Brenda Proffitt (Proffitt), the defendants' Practice Manager. On March 22, 2005, the plaintiff sent a letter (Ex. 2) to Dr. Meyer detailing the plaintiff's concerns with Dr. Meyer's actions. On the same day, the plaintiff sent an email (Ex. 7) to Proffitt informing Proffitt that Dr. Meyer and the plaintiff had met and resolved the issue. The plaintiff told Proffitt that she need not approach Dr. Meyer on the plaintiff's behalf because "[a]s far as [she was] concerned, it has been taken care of" (Ex. 7).

On three separate occasions subsequent to the March 17, 2005, incident, Dr. Meyer put his arm around the plaintiff and squeezed her side, drawing her closer to him. The first two incidents happened in July and August of 2005. The third incident happened on September 14, 2005, while Dr. Meyer was discussing a patient with the plaintiff, he repeated the squeezing action three times. The plaintiff did not say anything in response but tried to pull away each time Dr. Meyer put his arm around her. The plaintiff reported Dr. Meyer's July, August, and September 14th conduct to Proffitt and to Dr. Keith Vrbicky (Dr. Vrbicky), the owner, president, and an employee of the defendants.

After the plaintiff reported the squeezing incidents, the defendants conducted an investigation of the plaintiff's allegations and monitored Dr. Meyer from September 2005 to December 2005. During the time from August 2005 to Summer of 2006, the plaintiff met with her pastor for counseling and was separately treated by John Davies (Davies) for anxiety, stress, and depression. The plaintiff experienced an increase in the frequency of

3

migraine headaches, causing her to leave work early or take the day off due to the side effects of her headaches.  For these reasons, her work performance suffered.  Moreover, the plaintiff avoided Dr. Meyer and constantly feared Dr. Meyer would touch her in a sexually inappropriate manner.  On November 4, 2005, Dr. Vrbicky met with Dr. Meyer to discuss the plaintiff's allegations.  Dr. Vrbicky recommended Dr. Meyer see a counselor. Dr. Meyer refused.  On December  24, 2005, the plaintiff alleged three of her patients complained about Dr. Meyer's inappropriate actions, however, the plaintiff would not provide the patients' names.  On January 4, 2006, the defendants issued a written request seeking Dr. Meyer's agreement to undergo counseling (Ex. 30).  On February 17, 2006, the defendants demanded Dr. Meyer attend counseling.  On February 23, 2006, Dr. Meyer agreed to attend training about harassment and discrimination, but declined any type of mental health or psychological counseling (Ex. 33).  Dr. Meyer completed his course on March 8, 2006, in one session, although it had been previously scheduled for several sessions.  On April 10, 2006, the plaintiff resigned from her employment with defendants.

## ANALYSIS

### A.    Defendant's Motion for Judgment as a Matter of Law

The defendants seek post-verdict judgment as a matter of law by renewing their earlier motions.  Specifically, the defendants argue there is insufficient evidence to support the jury's finding for the plaintiff on her claim for hostile work environment because there is no causal nexus between Dr. Meyer's conduct and the plaintiff's gender, the conduct was not sufficiently severe or pervasive, and the defendants took prompt remedial action. Further, the defendants argue the damages award is excessive and unsupported by the evidence.

The court may grant judgment as a matter of law when "the evidence is such that, without weighing the credibility of the witness or otherwise considering the weight of the evidence, there can be only one conclusion as to the verdict that reasonable persons could have reached."  *GLB Enters., Inc. v. United States*, 232 F.3d 965, 968 (8th Cir. 2000) (**citing** *Lavender v. Kurn*, 327 U.S. 645, 653 (1946)).  A "jury verdict is entitled to extreme deference, and we will not set it aside unless no reasonable jury could have reached the

same verdict based on the evidence submitted." *Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1009 (8th Cir. 2008) (internal citations omitted). The court considers "the evidence in the light most favorable to the jury verdict." *Id.* The court assumes all conflicts in the evidence were resolved in the plaintiff's favor and the plaintiff proved all facts the evidence tended to prove, giving the plaintiff the benefit of all favorable inferences which may be reasonably drawn from the evidence. *Id.*

To succeed on her claim for a hostile work environment, a plaintiff must establish:

> (1) that she was a member of a protected group; (2) the occurrence of unwelcome harassment; (3) a causal nexus between the harassment and her membership in the protected group; (4) that the harassment affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt and effective remedial action.

*Anda v. Wickes Furniture Co., Inc.*, 517 F.3d 526, 531-32 (8th Cir. 2008) (citation omitted).

The plaintiff has undoubtedly established the first two elements of a hostile work environment claim. The plaintiff is a female who worked for the defendants. The plaintiff was kissed and inappropriately touched on more than one occasion by Dr. Meyer. The plaintiff expressed to Dr. Meyer on the first occasion, when she was kissed on the temple by Dr. Meyer, that his actions were inappropriate, which he acknowledged. Further, the plaintiff demonstrated the touching was unwelcome by lodging complaints against Dr. Meyer or expressing her unease to Proffitt, Davies, Dr. Vrbicky, and Dr. Meyer. Additionally, the plaintiff testified at trial that she positioned her body in a manner to avoid being touched by Dr. Meyer, or in the alternative, she would pull away from his unwelcome embrace. The remaining elements of a hostile work environment claim will be analyzed in turn by addressing the arguments raised by the defendants' in their motion.

### 1.    Causal Nexus

The defendants argue the evidence at trial proved the plaintiff's gender was not a cause of Dr. Meyer's conduct. First, the defendants contend the evidence at trial proved Dr. Meyer acted toward the plaintiff exactly as he acted toward other employees and

patients, both male and female.  Second, the defendants contend the evidence at trial proved, and the jury found, the defendants did not discriminate against the plaintiff with respect to her employment based on gender.

In response, the plaintiff contends the defendants' employee, Dr. Meyer, engaged in specific conduct toward the plaintiff based on gender.  The plaintiff argues the evidence establishes she was kissed and sexually touched because of her gender when Dr. Meyer, on several occasions, put his arm around her and pulled her into him, which involved him touching her breasts with his hand and his body.  Moreover, the plaintiff shows the defendants, themselves, characterized Dr. Meyer's conduct as "acts of sexual impropriety and familiarity" (Ex. 17).  Finally, the plaintiff contends the defendants did not offer any evidence that Dr. Meyer treated male and females the same.

"Whether harassing conduct constitutes discrimination based on sex is determined by whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Scusa v. Nestle U.S.A. Co., Inc.*, 181 F.3d 958, 965 (8th Cir. 1999) (**citing** *Montandon v. Farmland Indus., Inc.*, 116 F.3d 355, 358 (8th Cir. 1997)).  The plaintiff must prove that the discrimination was because of the plaintiff's sex.  **See** *Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 81 (1998).

The evidence at trial supports the jury's finding that Dr. Meyer's treatment of the plaintiff was based on her gender.  Although Dr. Meyer was described as a touchy person, the jury could reasonably find Dr. Meyer's conduct was directed at the plaintiff due to her gender.  The manner in which Dr. Meyer put his arm around the plaintiff and squeezed her provides evidence Dr. Meyer's actions were based on gender.  In addition, the jury saw evidence the defendants characterized Dr. Meyer's conduct as acts of sexual impropriety (Ex. 17).  Moreover, after the plaintiff lodged her complaint in September of 2005, Dr. Meyer made exaggerated movements and placed his hands in the air when Dr. Meyer was around the plaintiff, implying he could not touch her due to her gender.  Therefore, sufficient evidence existed at trial for the jury to find a causal nexus between Dr. Meyer's conduct and plaintiff's gender.

### 2.      Severe or Pervasive Conduct

The defendants argue the evidence at trial did not establish Dr. Meyer's conduct was sufficiently severe or pervasive to rise to the level of an actionable harm under Title VII. The defendants argue the plaintiff presented uncorroborated evidence.  The defendants contend Dr. Meyer's conduct was not physically violent or overtly threatening and Dr. Meyer's conduct did not changed the conditions of the plaintiff's employment.  Moreover, the defendants assert Dr. Meyer changed his behavior after the plaintiff complained. According to the defendants, the evidence presented at trial does not establish a hostile work environment because other courts have found more egregious conduct does not constitute an actionable hostile work environment.  The plaintiff disagrees.  She contends Dr. Meyer's actions rendered the plaintiff's work environment hostile and affected her employment.

"Hostile work environment claims are limited in nature, requiring a high evidentiary showing that the plaintiff's workplace is 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Vajdl v. Mesabi Acad. of KidsPeace, Inc.*, 484 F.3d 546, 550 (8th Cir. 2007) (**quoting** *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *Jenkins v. Winter*, 540 F.3d 742, 748 (8th Cir. 2008) (noting plaintiff's proof must establish "the harassment affected a term, condition, or privilege of employment").  "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment-an environment that a reasonable person would find hostile or abusive-is beyond Title VII's purview." *Oncale*, 523 U.S. at 80 (**quoting** *Harris*, 510 U.S. at 21).  "Thus, the fourth part of a hostile environment claim includes both objective and subjective components:  an environment that a reasonable person would find hostile and one that the victim actually perceived as abusive." *Duncan v. Gen. Motors Corp.*, 300 F.3d 928, 934 (8th Cir. 2002) (**citing** *Harris*, 510 U.S. at 21-22).  "In determining whether the conduct is sufficiently severe or pervasive, we look to the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Duncan*, 300

F.3d at 934 (internal quotation omitted).  Sporadic or isolated incidents generally cannot amount to severe or pervasive harassment.  *Brannum v. Missouri Dep't of Corr.*, 518 F.3d 542, 548 (8th Cir. 2008) (**citing** *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)); **see** *Devin v. Schwan's Home Serv., Inc.*, 491 F.3d 778, 788-90 (8th Cir. 2007). However, "[a] work environment is shaped by the accumulation of abusive conduct, and the resulting harm cannot be measured by carving it 'into a series of discrete incidents.'" *Hathaway v. Runyon*, 132 F.3d 1214, 1222 (8th Cir. 1997) (**quoting** *Burns v. McGregor Elec. Indus., Inc.*, 955 F.2d 559, 564 (8th Cir. 1992)).

The defendants cite to several cases where the Eighth Circuit Court of Appeals upheld or reinstated a jury verdict when a plaintiff was arguably subjected to more severe or pervasive conduct than the plaintiff in this case.  **See** *Eich v. Bd. of Regents for Cent. Mo. State Univ.*, 350 F.3d 752, 755-56 (8th Cir. 2003) (reinstating jury verdict where co-employee rubbed his hand up and down the plaintiff's leg, pressed up against the plaintiff, and pressed his groin against the plaintiff's shoulder); *Beard v Flying J., Inc.*, 266 F.3d 792, 797 (8th Cir. 2001) (affirming jury verdict where supervisor brushed his body against the plaintiff's breasts, rubbed tongs across the plaintiff's breasts, flicked a pen across the plaintiff's nipples, and then pointed toward his groin); *Howard v Burns Bros.*, 149 F.3d 835, 838 (8th Cir. 1998) (affirming jury verdict where co-employee brushed against the plaintiff, made lewd gestures, sexual innuendoes and comments); *Hathaway*, 132 F3d at 1217-18 (reinstating jury verdict where co-employee hit and squeezed the plaintiff's buttocks and, after being rebuffed by the plaintiff, made rude noises toward the plaintiff). In contrast, the defendants argue the conduct exhibited by Dr. Meyer is not remotely similar in terms of severity or pervasiveness to the conduct which created hostile work environments in *Eich*, *Beard*, *Howard*, or *Hathaway*.  Moreover, the defendants cite cases where there was a purportedly greater degree of harassment, yet the courts found no actionable hostile work environment.  **See** *Vajdl*, 484 F.3d at 550 (granting summary judgment to defendant where plaintiff was repeatedly asked out for dates and one co-worker made inappropriate comments for two weeks, yet the environment was not objectively hostile); *LeGrand v. Area Res. for Cmty. & Human Servs.*, 394 F.3d 1098, 1101-03 (8th Cir. 2005) (granting summary judgment because "three isolated incidents,

8

which occurred over a nine-month period, were not so severe or pervasive as to poison LeGrand's work environment").

However, most prominently, the defendants compare the plaintiff's case to the conduct alleged in **_Duncan_**, in which the jury verdict for the plaintiff was overturned.   In **Duncan**, the plaintiff was subjected to five incidents of sexual harassment by one co-worker:  (1) he propositioned the plaintiff for a relationship; (2) he touched the plaintiff's hand; (3) he requested the plaintiff sketch his planter which had a sexual connotation; (4) he listed the plaintiff on a Man Hater's Club poster; and (5) he requested the plaintiff type a list of He-Men Women Hater's beliefs.  **See _Duncan_**, 300 F.3d at 933-34.  The Eighth Circuit determined the plaintiff failed to show the conduct was so severe or pervasive to affect her terms or conditions of employment even though she provided evidence she was upset and embarrassed by the conduct.  **See _Duncan_**, 300 F.3d at 935; **see also** _Scusa_, 181 F.3d at 967 (experiencing unpleasant conduct and rude comments may not equate to severe or pervasive harassment that alters conditions of employment).  However, **Duncan** is distinguishable from the plaintiff's case because the conduct exhibited in **Duncan** was verbal or touching the plaintiff's hand.

By contrast, Dr. Meyer kissed the plaintiff on the temple and, on three occasions, Dr. Meyer put his arm around the plaintiff with his hand touching the side of the plaintiff's breast, pulling her toward him so that the plaintiff's other breast touched his body. Moreover, the plaintiff testified that after she told the defendants about Dr. Meyer's conduct, Dr. Meyer would place his hands up in the air as he walked by her to exaggerate the fact he was not touching her.   On several occasions, Dr. Meyer touched the plaintiff inappropriately, which the defendants acknowledge.   When viewed in the light most favorable to the plaintiff, the evidence presented to the jury, together with all reasonable inferences from it, was sufficient to support the jury's finding that Dr. Meyer's conduct created an objectively hostile work environment permeated with sexual harassment. Moreover, although the jury may also have decided the case differently, the defendants fail to show a complete absence of facts to support the jury conclusion or that a reasonable jury could not have reached the same conclusion.  In this case, the evidence presented at trial supports the jury's verdict.

### 3.    Prompt Remedial Action

The defendants argue the evidence at trial proved the defendants acted quickly to stop the alleged harassment by Dr. Meyer.  Further, the defendants argue the corrective measures were highly effective as Dr. Meyer's negative behavior toward the plaintiff ceased immediately after the plaintiff complained.  The defendants contend they were not required to terminate Dr. Meyer nor obtain the plaintiff's approval for any corrective action.

In sharp contrast, the plaintiff argues the evidence presented at trial clearly proves the defendants failed to take prompt remedial action.  The plaintiff contends the investigation into her allegations was cursory, at best, and the defendants did not meet with Dr. Meyer until almost two months after the plaintiff complained.  Moreover, when the defendants finally met with Dr. Meyer, the defendants merely requested, but did not require, Dr. Meyer to attend counseling.  The counseling was the only remedial action taken.  Finally, the plaintiff notes the defendants were not able to identify which individual employee was responsible for the alleged investigation of the plaintiff's complaints.

To prevail on a claim for hostile work environment, the plaintiff must establish "the employer knew or should have known of the harassment and failed to take prompt and effective remedial action."  *Anda*, 517 F.3d at 531-32.  When analyzing whether the defendants took reasonable remedial measures to end the harassment after the plaintiff filed her complaints, a court will analyze:

> the amount of time elapsed between the notice of harassment, which includes but is not limited to a complaint of sexual harassment, and the remedial action, and the options available to the employer such as employee training sessions, disciplinary action taken against the harasser(s), reprimands in personnel files, and terminations, and whether or not the measures ended the harassment.

*Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 633 (8th Cir. 2000) (**citing** *Carter v. Chrysler Corp.*, 173 F.3d 693, 702 (8th Cir. 1999)).

There is no dispute the defendants knew of the plaintiff's complaints about Dr. Meyer's conduct, within a short time of the various occurrences.  The plaintiff spoke with Davies, Proffitt, and Dr. Vrbicky about Dr. Meyer's conduct.  Furthermore, the defendants contacted legal counsel for a recommendation on how to handle the allegations and Dr.

Meyer's conduct.   Under these circumstances, the defendants contend, the corrective action was reasonable because Dr. Meyer's negative conduct immediately ceased after the plaintiff complained.   However, evidence in the record shows the defendants actions were neither prompt nor remedial.   The defendants did not meet with Dr. Meyer until November 4, 2005, nearly two months after the plaintiff's complaint and more than one month after the defendants' counsel urged them to take prompt action.   The defendants were not able to identify an employee who was in charge of the investigation.   Moreover, though Dr. Meyer did not physically touch the plaintiff after the complaints, Dr. Meyer would place his hands up in the air to exaggerate the fact.   The plaintiff had a constant fear that Dr. Meyer would act inappropriately again based on Dr. Meyer's attitude and the defendants' failure to act. Finally, the defendants had disciplinary action options available, but the defendants merely requested Dr. Meyer attend counseling.   Dr. Meyer eventually agreed to attend a five-day training about harassment and discrimination, but declined any type of mental health or psychological counseling (Ex. 33).   Dr. Meyer completed the training in one day, without repercussion.

When viewed in the light most favorable to the plaintiff, the evidence presented to the jury, together with all reasonable inferences from it, was sufficient to support the jury's finding that the defendants failed to take prompt or remedial action when addressing the plaintiff's complaints.   The defendants fail to show a complete absence of facts to support the conclusion the jury reached.

### 4.     Damages

The jury awarded the plaintiff $100,000 for non-economic damages, relating to her claim of a hostile work environment.   The claim is based on the sexual harassment the plaintiff suffered by Dr. Meyer's conduct and the defendants' inaction.   The defendants contend the damage award is unsupported by the evidence because the plaintiff did not establish she suffered extensive emotional trauma.   Specifically, the defendants argue the only evidence of treatment the plaintiff received was counseling from a pastor.   Otherwise, the defendants argue, the plaintiff provided no evidence to corroborate her suffering from emotional distress.   The plaintiff presented evidence that not only did she see her pastor,

who is a licensed counselor, she received treatment at work, with Davies, due to the increased anxiety and severe migraine headaches.  The symptoms, she testified, were caused by the incidents with Dr. Meyer and having to continue to work near him without an appropriate reaction by the defendants.  Moreover, the plaintiff feared Dr. Meyer would touch her again, causing her to avoid Dr. Meyer.

"A verdict is not considered excessive unless there is 'plain injustice' or a 'monstrous' or 'shocking' result."  *Eich*, 350 F.3d at 763 (**citing *Jenkins v. McLean Hotels, Inc.*, 859 F.2d 598, 600 (8th Cir. 1988)**).  "[A]wards for pain and suffering are highly subjective and should be committed to the sound discretion of the jury, especially when the jury is being asked to determine injuries not easily calculated in economic terms."  *Eich*, 350 F.3d at 763 (**quoting *Frazier v. Iowa Beef Processors, Inc.*, 200 F.3d 1190, 1193 (8th Cir. 2000)**).  The Eighth Circuit has upheld damages for emotional distress and mental anguish for similar and greater amounts.  **See *Eich*, 350 F.3d at 764** (reinstating $200,000 verdict based on demeaning and humiliating actions constituting sexual harassment); *Ross v. Douglas County, Neb.*, 234 F.3d 391, 397 (8th Cir. 2000) (upholding $100,000 for emotional distress for racial discrimination); *Kientzy v. McDonnell Douglas Corp.*, 990 F.2d 1051, 1061-62 (8th Cir. 1993) (upholding $125,000 for mental anguish and suffering).

In the present case, the plaintiff testified she underwent treatment for emotional distress based on the defendants and Dr. Meyer's conduct.  The plaintiff also testified she experienced increased stress, anxiety, and migraine headaches, and feared Dr. Meyer would touch her inappropriately again.  The plaintiff visited her pastor for counseling and Davies for treatment.  The plaintiff further testified interaction with Dr. Meyer made her ability to perform her job difficult, she was forced to take time away from work due to her anxiety and headaches.  "It is sufficient that [the plaintiff] credibly testified that she felt afraid, intimidated, and anxious, and that those feelings had a detrimental impact on her psychological well-being and on her ability to perform her work."  *Hathaway*, 132 F.3d at 1223 (noting plaintiff testified "she regularly interrupted her work in order to avoid encountering" the harasser).  Moreover, "[p]sychological harm is relevant to this inquiry, but the plaintiff is not required to demonstrate medical injury to succeed on her claim."  *Hathaway*, 132 F.3d at 1223 (**citing *Harris*, 510 U.S. at 22-23**).  The award of $100,000

does not "shock" the judicial conscience and the plaintiff provided sufficient evidence at trial to substantiate such award.  In sum, keeping in mind the court's deferential standard of review, the court concludes the jury's verdict of $100,000 for hostile work environment is supported by the evidence and the defendant's renewed motion for judgment as a matter of law is denied.

## B.   Defendants' Motion for New Trial

In the alternative to judgment as a matter of law, the defendants move for a new trial on two grounds.  First, the defendants contend the jury verdict on the plaintiff's hostile work environment claim is against the clear weight of the evidence.  Second, the defendants argue the jury's verdict is clearly excessive, especially in view of the jury's finding that the defendants did not engage in any gender based discrimination.  The defendants contend that if any award is proper, then the plaintiff should be awarded only $50,000.  The plaintiff argues there was ample evidence provided at trial which supports the jury's findings, and therefore the jury properly awarded her $100,000 in damages.

"The grant of a motion for a new trial is appropriate only if 'the verdict is against the weight of the evidence and . . . allowing it to stand would result in a miscarriage of justice.'" *Murphy v. Mo. Dep't of Corr.*, 506 F.3d 1111, 1116 (8th Cir. 2007) (**quoting *Jones v. TEK Indus., Inc.*, 319 F.3d 355, 358 (8th Cir. 2003)**).  Specifically, the defendants argue the jury's verdict is shockingly excessive and constitutes manifest error of fact, especially when viewed in light of the minimal proof the plaintiff suffered from emotional distress.  However, the plaintiff testified she sought counseling from a licensed counselor, her pastor.  Additionally, the plaintiff took anxiety medication because of Dr. Meyer's conduct and was treated for depression.  The plaintiff saw Davies related to her migraine headaches, which increased due to the plaintiff's stress and anxiety.  The plaintiff described her intense headaches with severe stomach aches and vomiting.  Moreover, the plaintiff felt humiliated about being sexually harassed and having her situation publically known.  The plaintiff also testified her work performance suffered due to a fear of being sexually touched by Dr. Meyer, particularly since the plaintiff did not believe the defendants were taking any curative measures.

13

When viewed in the light most favorable to the plaintiff, the evidence presented to the jury, together with all reasonable inferences from it, was sufficient to support the jury's determination the plaintiff sustained $100,000 in damages for her claim of a hostile work environment. The evidence presented at trial showed the plaintiff suffered emotional distress due to Dr. Meyer's conduct and the lack of investigation conducted by the defendants. Therefore, defendants' alternative motion for new trial is denied.

## C.    Plaintiff's Motion for Attorney's Fees

The plaintiff seeks an award of $70,870 for attorney services. The plaintiff requests attorney fees due to her success at trial as the jury found for the plaintiff on her claim for hostile work environment based on sexual harassment and awarded her $100,000. The defendants oppose the amount of attorney's fees. Specifically, the defendants argue the plaintiff was only successful on one of her claims and the hours the plaintiff's counsel billed were disproportionate to the needs of the case. The defendants argue the plaintiff's award for attorney's fees should be limited to fifty percent of the requested amount, or $ 36,000, which would be a reasonable fee.

Generally, parties to a lawsuit must bear their own costs. However, in an action seeking to enforce statutes related to unlawful employment practices "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . as part of the costs." 42 U.S.C. § 2000e-5(k). "Accordingly, a 'plaintiff must be a "prevailing party" to recover an attorney's fee.'" *Advantage Media, L.L.C. v. City of Hopkins, Minn.*, 511 F.3d 833, 836 (8th Cir. 2008) (**quoting** *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The applicant for an award of attorney's fees has the burden of showing both the claimed rate and the number of hours are reasonable. **See** *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564-66 (1986). "In calculating the reasonable fee, a court must be mindful of Congress' intent to encourage the enforcement of constitutional rights through the award of fees which are adequate to attract competent counsel, but which do not produce windfalls to attorneys." *Shakopee Mdewakanton Sioux Cmty. v. City of Prior Lake, Minn.*, 771 F.2d 1153, 1160 (8th Cir. 1985) (internal quotation and citation omitted). "There is 'no precise rule or formula' for making fee determinations in

14

cases with only partial success." *Warnock v. Archer*, 397 F.3d 1024, 1026 (8th Cir. 2005) (**quoting** *Hensley*, 461 U.S. at 436-37).  Absent the ability to separate out which hours were billed for which issues, a court "may simply reduce the award to account for the [plaintiff's] limited success." *Warnock*, 397 F.3d at 1026 (alteration in original) (**quoting** *Hensley*, 461 U.S. at 436-37).  To calculate a reasonable attorney's fee, the court relies on the "lodestar" method. *Farmers Coop Co. v. Senske & Son Transfer Co.*, 572 F.3d 492, 500 (8th Cir. 2009).

The lodestar method involves several steps.  **See**, **e.g.**, *ACLU Neb. Found. v. City of Plattsmouth, Neb.*, 199 F. Supp. 2d 964, 966-67 (D. Neb. 2002).  In the first two steps, the court determines whether a fee award of any kind is justified and what such an award includes in the "relevant market." *Id.* "For example, if lawyers in the relevant market charge fee-paying clients for paralegal or law-clerk time, an attorney fee award may include an amount equivalent to what law firms would customarily bill clients for the work of paralegals and law clerks." *Id.* Third, the court calculates the "lodestar" by determining the number of hours reasonably expended multiplied by the applicable hourly market rate for the relevant legal services. *Id.* The court determines the rate by reference to the "relevant community," typically where the case was tried. *Farmers Coop*, 572 F.3d at 500.  "The hours reasonably expended are determined by reviewing the records submitted by counsel, verifying the accuracy of the records, and then deducting excessive, redundant, or otherwise unnecessary work." *ACLU*, 199 F. Supp. at 967 (noting "reductions for insufficient documentation are included in the lodestar calculation").  Last, the lodestar may be enhanced or reduced based on circumstances such as partial or incomplete success and other factors specific to the case. *Id.*; **see** *Farmers Coop*, 572 F.3d at 500.

The court determines an award of attorney's fees is justified under 42 U.S.C. § 2000e-5(k) and the circumstances of this case.  The defendants do not contest the hourly rates, which appear consistent with the hourly rates in the relevant market based on the evidence in the record.  Subject to these findings, the plaintiff seeks compensation for the services of Thomas M. White, an attorney, for 91.94 hours at a rate of $250 per hour; C. Thomas White, an attorney, for .80 hours at a rate of $300 per hour; Amy S. Jorgensen, an attorney, for 201.10 hours at a rate of $200 per hour; Jeni D. Wacha, a paralegal, for

147 hours at a rate of $50 per hour; and Mary Jo Gunnels for one hour at a rate of $75 per hour.  In sum, the plaintiff seeks an award of $70,870.

The defendants argue several of the hours billed are unreasonable because the plaintiff's case was based on primarily uncontested facts, and the billed hours are excessive, redundant, and unjustified.  **See** Filing No. 83 - Brief p. 2.  Specifically, the defendants contend it was unnecessary, particularly under the circumstances of this case, to have two attorneys and one paralegal at every deposition.  **Id.** at 2-3.  The defendants also challenge the time spent on other routine tasks surrounding discovery.  **Id.**  The plaintiff provided no explanation for having two attorneys and one paralegal at every deposition, but the attorneys attest the number of hours were truly and accurate spent as described.  **See, e.g.**, Filing No. 78 - Ex. 1 White Aff.  Although the court will not second-guess the time spent on preparing written discovery, the court finds the plaintiff has failed to meet her burden of showing the number of apparently redundant hours spent during depositions was reasonable.  Accordingly, the court will reduce the number of hours recoverable of the redundant time for attending depositions.  Thus, the hours for the services of Thomas M. White will be decreased by six hours; Amy S. Jorgensen will be decreased by eight and one-half hours; and Jeni D. Wacha will be decreased by twelve and one-half hours.  With this adjustment, the plaintiff would be awarded $67,045.

Finally, the court has the discretion to enhance or reduce the award as deemed necessary by the court. In this instance the court does not find reason to increase the award for attorney's fees.  However, the court does find reason to decrease the requested attorney's fees based on the plaintiff's relative success at trial.  The jury found in favor of the plaintiff on her claim of a hostile work environment based on sexual harassment and awarded damages in the amount of $100,000.   In contrast, the jury found for the defendants on the plaintiff's claim for constructive discharge.  Additionally, the court granted the defendants' motion for judgment as a matter of law on the plaintiff's claim for gender discrimination.  Although the court cannot separate the hours expended on a claim-by-claim basis, the court does determine the attorney's fees should be reduced by twenty-five percent based on the dismissed claims.  The reduction reflects the claims were based on some similar facts, but resulted in some dissimilar evidentiary and legal issues.  Therefore,

16

based on the above findings, the court calculates a reasonable award for the plaintiff is $50,283.75.

**IT IS ORDERED:**

1.      The defendants' Renewed Motion for Judgment as a Matter of Law, or in the Alternative Motion for New Trial (Filing No. 75) is denied.

2.      The plaintiff's Motion for Attorney Fees (Filing No. 77) is granted, in part, and denied, in part, as set forth herein.

3.      The plaintiff is awarded $50,283.75 for reasonable attorney's fees.

DATED this 16th day of September, 2009.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.